## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------- x

*In re*                                  :        **Chapter 11**
                                         :
**TRANSFORMATION TECH**                  :        **Case No. 20–12970 (MFW)**
**INVESTORS, INC.,**                     :
                                         :
                 Debtor.[1]              :        Objection Deadline: Nov. 25, 2020 at 4:00 p.m. (ET)
                                         :        Hearing Date: Dec. 2, 2020 at 10:30 a.m. (ET)

-------------------------------------------------------- x

### APPLICATION OF THE DEBTOR
### TO RETAIN AND EMPLOY RELIABLE COMPANIES
### D/B/A RELIABLE AS CLAIMS AND NOTICING AGENT AND ADMINISTRATIVE
### ADVISOR TO THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE

Transformation Tech Investors, Inc. ("**TTI**"), as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully represents as follows in support of this application (the "**Application**"):[2]

### BACKGROUND

1.      On November 11, 2020 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtor is authorized to continue to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

2.      Additional information regarding the Debtor's businesses, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the *Declaration*

---

[1] The Debtor was formerly known as Interface Preferred Holdings, Inc.  The last four digits of the Debtor's federal tax identification number are (6677) and the Debtor's corporate headquarters and service address is 3773 Corporate Center Dr., Earth City, MO 63045.

[2] Certain facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined herein) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

*of Mark Pape in Support of Chapter 11 Petition and First Day Pleadings* (the "**First Day Declaration**"), filed on the Petition Date and incorporated herein by reference.

## JURISDICTION

3.       The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Application to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

4.       By this Application, pursuant to sections 105(a) and 327 of the Bankruptcy Code, section 156(c) of title 28 of the United States Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Local Rules 2002-1(f), 2014-1 and 2016-2, the Debtor requests entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), authorizing, but not directing, the Debtor to employ and retain Reliable Companies d/b/a Reliable ("**Reliable**") as its claims and noticing agent and administrative advisor *nunc pro tunc* to the Petition Date, on the terms and conditions set forth in the engagement agreement between Reliable and the Debtor (the "**Engagement Agreement**"),[3] dated as of

---

[3] Any description of the terms of the Engagement Agreement herein is a summary provided for convenience purposes only.  In the event of any conflict between the terms of the Engagement Agreement as described herein and the actual terms of the Engagement Agreement, the latter shall control.

October 23, 2020, a copy of which is attached as **Exhibit 1** to the Edelson Declaration (as defined below).

5.    The Debtor's selection of Reliable to act as its claims and noticing agent satisfies the Court's Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (the "**Claims Agent Protocol**").  The Debtor has obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtor submits, based on all engagement proposals that it and its advisor have obtained and reviewed, that Reliable's rates are competitive and reasonable given Reliable's quality of services and expertise.  The terms of Reliable's retention are set forth in the Engagement Agreement; *provided that* the Debtor is seeking approval solely of the terms and provisions as set forth in this Application and the Proposed Order.

6.    In addition, the Debtor believes that administration of its chapter 11 case may require Reliable to perform duties outside the scope of 28 U.S.C. § 156(c).  Accordingly, the Debtor submits this Application to retain and employ Reliable as administrative advisor pursuant to section 327(a) of the Bankruptcy Code to provide services under the Engagement Agreement that are outside the scope of the services Reliable seeks to provide to the Debtor pursuant to 28 U.S.C. § 156(c).

7.    In support of this Application, the Debtor submits the Declaration of Justin K. Edelson, Director of Corporate Restructuring (the "**Edelson Declaration**"), a copy of which is attached hereto as **Exhibit B** and incorporated herein.

## SERVICES TO BE PROVIDED

8.    Under the Office of the Clerk of the Bankruptcy Court's (the "**Clerk**") delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f), Reliable will perform the

3

following tasks in its role as claims and noticing agent in this chapter 11 case (collectively,

the "**Claims and Noticing Services**"), as well as all quality control relating thereto:

a)  Prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of this chapter 11 case and, if required, the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

b)  Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtor's known creditors and the amounts owed thereto;

c)  Maintain (i) a list of all potential creditors, equity holders and other parties in interest and (ii) a "core" service mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make such lists available upon request by a party-in-interest or the Clerk;

d)  Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, if any, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e)  Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f)  For all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed, with the Clerk an affidavit or certificate of service within seven business days of service that includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was served (in alphabetical order) with their addresses as appropriate; (iii) the manner of service; and (iv) the date served;

g)  Process all proofs of claim received, including those received by the Clerk, check processing for accuracy, and maintain the original proofs of claim in a secure area;

h)      Provide an electronic interface for filing proofs of claim;

i)      Maintain the official claims register for the Debtor (the "**Claims Register**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent; if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*); and (vi) any disposition of the claim;

j)      Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k)      Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

l)      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m)      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Reliable, not less than weekly;

n)      Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o)      Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

p)      Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q)      Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

r)      If this chapter 11 case is converted to case under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Reliable of entry of the order converting the cases;

s)      Thirty days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Reliable as claims and noticing agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

t)    Within seven days of notice to Reliable of entry of an order closing of this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the chapter 11 case; and

u)    At the close of this chapter 11 case, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154-1096 or (B) any other location requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

9.    The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Reliable.

10.    In addition, pursuant to the Engagement Agreement, the Debtor seeks to retain Reliable as administrative advisor to provide, among other things, the following bankruptcy administration services (the "**Administration Services**"), if and to the extent requested:

a)    Assist with, among other things, solicitation, balloting, and tabulation of votes, and prepare any related reports, as required in support of confirmation of a chapter 11 plan, if any, and in connection with such services, process requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices and institutional holders;

b)    Prepare an official ballot certification and, if necessary, testify in support of the ballot tabulation results;

c)    Assist with the preparation of the Debtor's schedules of assets and liabilities and statements of financial affairs and gather data in conjunction therewith (to the extent this requirement is not waived);

d)    Provide a confidential data room, if requested;

e)    Manage and coordinate any distributions pursuant to a chapter 11 plan, if any; and

f)    Provide such other processing, solicitation, balloting and other administrative services described in the Engagement Agreement, but not included in tasks in its role as claims and noticing agent permitted by 28 U.S.C. § 156(c), as may be requested from time to time by the Debtors, the Court or the Clerk.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

11.    This Application complies with the Claims Agent Protocol and substantially conforms to the standard application pursuant to 28 U.S.C. § 156(c) regularly filed with and

granted by this Court.  To the extent that there is any inconsistency among this Application, the

Proposed Order and the Engagement Agreement, the Proposed Order shall govern in all respects.

## BASIS FOR RELIEF REQUESTED

**A.      The Appointment of Reliable as Claims and Noticing Agent is Warranted Under 28 U.S.C. § 156(c)**

12.      Section 156(c) of title 28 of the United States Code, which governs the staffing and

expenses of the bankruptcy court, authorizes the Court to use facilities other than those of the Clerk

for the administration of chapter 11 cases, and provides as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c).

13.      By appointing Reliable as the claims and noticing agent in this chapter 11 case, the

distribution of notices and the processing of claims will be expedited and the Clerk will be relieved

of the administrative burden of processing any such claims.

14.      The Debtor submits, based on all engagement proposals obtained and reviewed,

that Reliable's rates are competitive and reasonable given Reliable's quality of services and

expertise.

15.      Based on the foregoing, this Application conforms to the standard application in

use by this Court.

16.      Pursuant to the Debtor's request, Reliable has served in the capacity as claims and

noticing agent since the Petition Date with assurances that the Debtor would seek approval of

Reliable's employment and retention *nunc pro tunc* to the Petition Date, so that Reliable may be

compensated for services prior to entry of an order approving Reliable's retention.  No party-in-

interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided herein, because Reliable has provided and continues to provide valuable services to the Debtor's estate in the interim period.  Courts in this jurisdiction have routinely approved *nunc pro tunc* employment similar to that requested herein in matters comparable to this matter.

17.     Based on the foregoing, the Debtor has satisfied the requirements of 28 U.S.C. § 156(c) and the Local Rules.  Accordingly, the Debtor respectfully requests the entry of an order pursuant to 28 U.S.C. § 156(c) and Local Rule 2002–1(f) authorizing the Debtor to retain and employ Reliable as the claims and noticing agent, *nunc pro tunc* to the Petition Date.

**B.     The Retention of Reliable Under Section 327(a) of the Bankruptcy Code is in the Best Interests of the Debtor's Estate**

18.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

19.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

20.     In light of the complexity of this chapter 11 case, the Debtor respectfully submits that retaining and employing Reliable as administrative advisor pursuant to the terms of the Engagement Agreement is necessary and in the best interests of the Debtor's estate and all parties

8

in interest in this chapter 11 case.  The Debtor also believes that the terms and conditions of the Engagement Agreement are reasonable in light of the services to be performed by Reliable as administrative advisor in this chapter 11 case.

21.     Accordingly, to help manage administrative tasks with respect to the creditors and other parties that are expected to be involved in the Debtor's chapter 11 case, the Debtor respectfully requests that the Court enter an order appointing Reliable as the administrative advisor in this chapter 11 case pursuant to sections 327(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-2.

22.     The Debtor believes the retention of Reliable is in the best interests of the Debtor, the Debtor's estate, and all parties in interest.

23.     The Debtor's knowledge, information and belief regarding the matters set forth in this Application are based on and made in reliance upon the Edelson Declaration.

### RELIABLE'S QUALIFICATIONS

24.     Reliable is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Reliable's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases of the size and complexity of this case. Reliable's professionals have acted as debtor's official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide.  *See, e.g.*, *In re Eigen, Inc.*, Case No. 10-11061 (PJW) (Bankr. D. Del. Jul. 14, 2010) [Docket No. 153]; *In re GigaBeam Corp.*, Case No. 09-13113 (MFW) (Bankr. D. Del. Sep. 10, 2009) [Docket No. 37]; *In re Isolagen, Inc.*, Case No. 09-12072 (MFW) (Bankr. D. Del. Jun. 17, 2009) [Docket No. 23].  In addition, Reliable's professionals have substantial experience providing the bankruptcy administrative services

contemplated by the Engagement Agreement in numerous cases of comparable size, including cases in this District. *See, e.g.*, *In re MMC Precision Holdings Corp.*, Case No. 09-10998 (BLS) (Bankr. D. Del. June 30, 2010) [Docket No. 550].

25.     By appointing Reliable as claims and noticing agent in this chapter 11 case, the distribution of notices and the processing of claims will be handled efficiently and expeditiously. Further, Reliable's appointment would relieve the Clerk of the administrative burden of processing what may be an overwhelming number of claims.

### RELIABLE'S COMPENSATION

26.     The Debtor requests that the undisputed fees and expenses incurred by Reliable in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtor's chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Reliable agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties will meet and confer in an attempt to resolve the dispute. In the event the parties are unable to reach a resolution, they may seek resolution of the matter from the Court.

27.     In addition, Reliable will charge the Debtor for the Administration Services as administrative advisor in accordance with the terms of the Engagement Agreement. The Debtor respectfully submits that Reliable's rates are competitive and comparable to the rates its

competitors charge for similar services.  Indeed, the Debtor conducted a review and competitive comparison of other firms and reviewed the rates of other firms before selecting Reliable as claims and noticing agent and administrative advisor.  The Debtor believes Reliable's rates are more than reasonable given the quality of Reliable's services and its professionals' bankruptcy expertise. Additionally, Reliable will seek reimbursement from the Debtor for reasonable expenses in accordance with the terms of the Engagement Agreement.  Reliable intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred after the Petition Date in connection with the services it provides as administrative advisor pursuant to the Engagement Agreement.  Reliable will comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in this chapter 11 case regarding professional compensation and reimbursement of expenses.

28.    Prior to the Petition Date, the Debtor provided Reliable a retainer in the amount of $5,000.00 (the "**Retainer**").  Reliable seeks to first apply the retainer to any unpaid pre-petition fees and expenses and then against any bills that remain unpaid for services rendered and expenses incurred by the Debtor for post-petition services fees and expenses.  Subsequent payments received for previous outstanding invoices will be used to bring the retainer back to its original amount.

29.    Additionally, as set forth more fully in the Engagement Agreement, the Debtor has agreed to indemnify and hold harmless Reliable and its members, managers, directors, officers, employees, affiliates and agents against any and all claims and damages in connection with the services provided pursuant to Engagement Agreement.  Such indemnification excludes circumstances resulting from, arising out of, or related to Reliable's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or the Proposed Order.  The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary

RLF1 24308094v.1

to retain the services of a claims and noticing agent and administrative advisor in this chapter 11 case.

## RELIABLE'S DISINTERESTEDNESS

30.     Reliable has reviewed its conflicts database to determine whether it has any relationships with the creditors or other parties in interest identified by the Debtor.  To the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Edelson Declaration, Reliable is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.  Reliable believes that it does not have any relationships with creditors or other parties in interest in this chapter 11 case that would present a disqualifying conflict of interest.

31.     Moreover, in connection with its retention as claims and noticing agent, Reliable represents in the Edelson Declaration, among other things, the following:

(a)     Reliable is not a creditor of the Debtor;

(b)     Reliable will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in this chapter 11 case;

(c)     By accepting employment in this chapter 11 case, Reliable waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

(d)     In its capacity as the claims and noticing agent in this chapter 11 case, Reliable will not be an agent of the United States and will not act on behalf of the United States;

(e)     Reliable will not employ any past or present employees of the Debtor in connection with its work as the claims and noticing agent in this chapter 11 case;

12

      (f)      Reliable is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

      (g)      In its capacity as claims and noticing agent in this chapter 11 case, Reliable will not intentionally misrepresent any fact to any person;

      (h)      Reliable shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

      (i)      Reliable will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

      (j)      None of the services provided by Reliable as claims and noticing agent in this chapter 11 case shall be at the expense of the Clerk.

32.     Reliable will supplement its disclosure to the Court if any facts or circumstances are subsequently discovered that would require such additional disclosure.

## NOTICE

33.     Notice of this Application will be provided to (i) the U.S. Trustee; (ii) the holders all known claims against the Debtor; (iii) the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the attorneys general for Delaware and Missouri; (vi) the ISS Secured Lenders; (vii) counsel to the lenders under the DIP Financing; and (viii) any party entitled to notice under Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  The Debtor respectfully submits that no further notice is required.  No previous request for the relief sought herein has been made by the Debtor to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtor respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 12, 2020

TRANSFORMATION TECH
INVESTORS, INC.

*/s/ Mark Pape*
Mark Pape
Independent Director