**<u>Exhibit 1</u>**

Purchase Agreement

Execution Version

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT,** entered into as of the 11th day of November, 2020, is by and between Transformation Tech Investors, Inc., a Delaware corporation (the "Seller"), and Innovation Tech Investors, Inc., a Delaware corporation (the "Purchaser"). The Seller and the Purchaser are referred to collectively herein as the "Parties" and sometimes individually as a "Party".

**WHEREAS,** the Seller owns 100% of the membership interests (collectively, the "Membership Interests") of Interface Security Systems, L.L.C., a Louisiana limited liability company (the "Company"), and is the sole member of the Company;

**WHEREAS,** on November 11, 2020 (the "Petition Date"), the Seller filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") with the resulting case being *In re Transformation Tech Investors, Inc.,* Case No. 20-12970 (the "Chapter 11 Case"); and

**WHEREAS,** the Purchaser desires to purchase and be admitted as the sole member of the Company, and the Seller desires to sell to the Purchaser, 100% of the Membership Interests (the "Acquired Interests") in a sale authorized by the Bankruptcy Court pursuant to, *inter alia*, section 363 of the Bankruptcy Code, upon and subject to the terms and conditions hereinafter set forth.

**NOW THEREFORE,** in consideration of the foregoing and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto hereby agree as follows:

1. **Purchase of the Acquired Interests.** Subject to the satisfaction of the terms and conditions set forth herein, the Seller hereby agrees to sell to the Purchaser, and the Purchaser hereby agrees to purchase from the Seller, the Acquired Interests free and clear of all liens (other than liens contemplated by Section 3.a) below for a purchase price equal to Five Million Dollars ($5,000,000) (the "Base Purchase Price") plus the assumption of the ISS Guaranteed Obligations (together, the "Purchase Price"). The Purchase Price shall be satisfied and paid at the Closing by (i) paying, by wire transfer in immediately available funds, an amount equal to the Base Purchase Price minus the Credit Bid (the "Cash Purchase Price"); (ii) assuming the ISS Guaranteed Obligations; and (iii) Purchaser and the DIP Lenders acknowledging the satisfaction of the DIP Obligations and the release of all of the security interests and liens on the Acquired Interests securing the DIP Obligations (the "Credit Bid and Release").

2. **Closing.** Subject to the satisfaction of the terms and conditions set forth herein, the purchase and sale of the Acquired Interests as provided for herein shall be consummated and closed (the "Closing") within seven (7) days following the satisfaction of the conditions precedent set forth in Sections 5.a.iv) and 5.b.iv) hereof (the "Closing Date") by the electronic exchange of the duly executed documents contemplated in Section 2(b) and Section 2(c) below (which may be signed electronically), Purchaser's payment of the Purchase Price, and a telephonic conference call during which the Parties (directly or through a representative) confirm the occurrence of the Closing. At Closing, the Parties shall take (or cause to be taken) the following actions:

    a.      The Purchaser shall (i) pay the Cash Purchase Price to the Seller, by wire

transfer of immediately available funds to the Seller's designated account, and (ii) deliver to the Seller (A) an executed Assignment, Acceptance and Assumption Agreement in the form attached hereto as <u>Exhibit A</u> (the "<u>Assignment and Assumption Agreement</u>"), (B) the Credit Bid and Release, and (C) the Amended Debt Documents (as defined in the Restructuring Support Agreement) evidencing the Purchaser's assumption of the ISS Guaranteed Obligations.

b.    The Seller shall deliver to the Purchaser the executed Assignment and Assumption Agreement.

c.    The Purchaser and the Seller shall each deliver to the other a certificate stating that the conditions set forth in Sections 5.a.i) and 5.a.ii), with respect to such certificate of the Seller, and Sections 5.b.i) and 5.b.ii), with respect to such certificate of the Purchaser, have been satisfied.

**3.    <u>Representations and Warranties of the Seller</u>.**  The Seller hereby represents and warrants to the Purchaser that, as of the date hereof and as of the Closing Date:

a.    The Seller is the record and beneficial owner of, and holds good, marketable and valid title to, one hundred percent (100%) of the Membership Interests of the Company and, subject only to the entry of the Approval Order (as hereinafter defined), may transfer the Acquired Interests to the Purchaser, free and clear of all liens, encumbrances, forfeitures, pledges, penalties, charges, judgments, security interests, options, rights of first refusal, equities or claims or rights of others whatsoever as provided for in the Approval Order (other than (x) liens securing the ISS Guaranteed Obligations pursuant to the Pledge Agreement referred to below and (y) liens that will attach to the proceeds of this sale under this Agreement pursuant to section 363 of the Bankruptcy Code or that will not survive Closing);

b.    The Acquired Interests constitute the Seller's entire ownership interest in the Company;

c.    Subject to the entry of the Approval Order (as hereinafter defined): (i) the Seller has full corporate power and authority under the General Corporation Law of the State of Delaware (the "<u>DGCL</u>") to execute this Agreement and consummate the transactions contemplated hereby, and (ii) this Agreement has been duly executed by the Seller and constitutes the legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms;

d.    Except for the Chapter 11 Case, there is no action, arbitration proceeding, or governmental proceeding pending or, to the Seller's knowledge, threatened against or affecting the Acquired Interests; and

e.    Except for (i) the approval contemplated by the Approval Order and (ii) the consent of the secured parties under that certain Pledge Agreement, dated August 7, 2019, securing the ISS Guaranteed Obligations from the Debtor in favor of U.S. Bank, National Association as administrative agent (the "<u>Pledge Agreement</u>"), which consent has been obtained, to its knowledge, the Seller's transfer of the Acquired Interests to the Purchaser is not subject to the consent or approval of any court, governmental agency or third party.

**4.    <u>Representations and Warranties of the Purchaser</u>.**  The Purchaser hereby represents

Execution Version

and warrants to the Seller that, as of the date hereof and as of the Closing Date:

a.      The Purchaser is a corporation duly organized and validly existing and in good standing under the laws of the State of Delaware; and

b.      The Purchaser has full power and authority to execute this Agreement and consummate the transactions contemplated hereby.  This Agreement has been duly executed by the authorized officer of the Purchaser and constitutes the legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms.

c.      The Purchaser affirms that it is not a condition to Closing or to any of its other obligations under this Agreement that the Purchaser obtain financing for or related to any of the transactions contemplated hereby.

d.      Immediately after giving effect to the transactions contemplated hereby, the Purchaser shall be able to pay its debts as they become due and shall own property which has a fair saleable value greater than the amounts required to pay its debts (including a reasonable estimate of the amount of all contingent liabilities).  Immediately after giving effect to the transactions contemplated hereby, the Purchaser shall have adequate capital to carry on its business.  No transfer of property is being made and no obligation is being incurred in connection with the transactions contemplated by this Agreement with the intent to hinder, delay or defraud either present or future creditors of the Purchaser.

e.      Except for the Chapter 11 Case, there is no action, arbitration proceeding, or governmental proceeding pending or, to the Purchaser's knowledge, threatened against or affecting the Purchaser, which if determined adversely to the Purchaser, would be reasonably expected to result in a material adverse effect on the Purchaser's ability to consummate the transactions contemplated hereby.

f.      Except for (i) the approval and authorization of the board of directors of the Purchaser (which approval and authorization has been obtained), and (ii) the approval contemplated by the Approval Order, to its knowledge, the Purchaser's purchase of the Acquired Interests is not subject to the consent or approval of any court, governmental agency or third party.

g.      Purchaser (i) has as of the date hereof, and at the Closing will have, sufficient funds available to pay the Purchase Price, after giving effect to the amount of the DIP Loan which will be available to be credit bid, and any expenses incurred by Purchaser in connection with the transactions contemplated hereby, (ii) has as of the date hereof, and at the Closing will have, the resources and capabilities (financial or otherwise) to perform its obligations under this Agreement and the Transaction Documents, and (iii) has not incurred any obligation, commitment, restriction or liability of any kind, which would impair or adversely affect such resources and capabilities.

5.      **Conditions to Closing**.

a.      The Purchaser's obligations to purchase the Acquired Interests at the Closing and to take any other actions required to be taken by the Purchaser at the Closing are subject to the satisfaction, at or prior to the Closing, of each of the following conditions (any of which

Execution Version

may be waived by the Purchaser in writing in whole or in part):

i.        All of the representations and warranties of the Seller set forth in this Agreement shall be true and accurate as of the Closing Date;

ii.        All of the covenants and obligations that the Seller is required to perform or to comply with pursuant to this Agreement at or prior to the Closing Date shall have been duly performed and complied with;

iii.        The Seller shall have caused the documents and instruments required to be delivered by the Seller to the Purchaser at the Closing to be delivered to the Purchaser;

iv.        Entry of an order of the Bankruptcy Court in the Chapter 11 Case granting authority for the Seller to enter into and perform under this Agreement in substantially the form of Exhibit B attached hereto (the "Approval Order"), which Approval Order shall have become a Final Order (as hereinafter defined); and

v.        There shall be no Material Adverse Change occurring in the business of the Company between the date hereof and the Closing Date that is not cured by or on behalf of the Company before the earlier of the Closing Date and the date on which this Agreement is terminated pursuant to Section 7.

b.        The Seller's obligations to sell the Acquired Interests at the Closing and to take any other actions required to be taken by the Seller at the Closing are subject to the satisfaction, at or prior to the Closing, of each of the following conditions (any of which may be waived by the Seller in writing in whole or in part):

i.        All of the representations and warranties of the Purchaser set forth in this Agreement be true and accurate as of the Closing Date;

ii.        All of the covenants and obligations that the Purchaser is required to perform or to comply with pursuant to this Agreement at or prior to the Closing Date shall have been duly performed and complied with;

iii.        The Purchaser shall have caused the documents and instruments required to be delivered by the Company to the Seller at the Closing to be delivered to the Seller;

iv.        Entry of the Approval Order by the Bankruptcy Court in the Chapter 11 Cases, which Approval Order shall have become a Final Order;

v.        Privileged Communications Transfer shall have been completed; and

vi.        The Seller shall have received the written consent of the Required Holders (as defined therein) under the DIP Facility Agreement, to consummate the transactions contemplated by this Agreement.

6.        **Covenants Pending Closing.**  From and after the date of this Agreement, the Parties shall use commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper or advisable and consistent with applicable law to cause the conditions to Closing to be satisfied, and to consummate the transactions contemplated hereby as soon as reasonably practicable.  In furtherance of the foregoing, as soon as reasonably practicable following

the execution of this Agreement by the Purchaser and the Seller, the Seller shall file a motion (the "Approval Motion") with the Bankruptcy Court in the Chapter 11 Case seeking entry of the Bidding Procedures Order and the Approval Order and the Seller shall use its commercially reasonable efforts to prosecute such Approval Motion in good faith.  The Purchaser shall promptly take all actions as are reasonably requested by the Seller to assist in obtaining the Bankruptcy Court's entry of the Approval Order, including furnishing documents or information for filing with the Bankruptcy Court and making the Purchaser's employees and representatives available to testify before the Bankruptcy Court.

      **7.**     **Termination.**    Anything contained herein to the contrary notwithstanding, this Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to the Closing Date, as follows:

      a.    by the mutual written consent of the Purchaser and the Seller;

      b.    by the Seller (upon written notice thereof to the Purchaser) if (i) there has been a breach by the Purchaser of any covenant, representation or warranty contained in this Agreement and such breach has not been waived by the Seller, or cured by the Purchaser within fifteen (15) days after written notice thereof from the Seller, (ii) the Purchaser has not satisfied all of the closing conditions set forth in Sections 5.b.i), 5.b.ii) and 5.b.iii) no later than 90 days after the Petition Date (the "Outside Date") (except to the extent that the same have been waived in writing by the Seller), (iii) the condition set forth in Section 5.b.iv) has not been satisfied no later than 75 days after the Petition Date; or (iv) the condition set forth in Section 5.b.vi) has not been satisfied by the Outside Date.

      c.    by the Purchaser (upon written notice thereof to the Seller) if:

      i.    there has been a breach by the Seller of any covenant, representation or warranty contained in this Agreement and such breach has not been waived by the Purchaser, or cured by the Seller within fifteen (15) days after written notice thereof from the Purchaser;

      ii.    the Seller has not satisfied all of the closing conditions set forth in Sections 5.a.i, 5.a.ii., 5.a.iii. and 5.b.v. by the Outside Date (except to the extent that the same have been waived in writing by the Purchaser);

      iii.    the condition set forth in Section 5.a.iv. has not been satisfied no later than 75 days after the Petition Date;

      iv.    the condition set forth in Section 5.a.v. has not been satisfied;

      v.    the Bankruptcy Court enters an order that precludes the consummation of the transactions contemplated by this Agreement on terms and conditions set forth herein;

      vi.    Seller enters into one or more agreements to sell, transfer, or otherwise dispose of the Acquired Interests to a Person other than Purchaser;

      vii.    the Restructuring Support Agreement is terminated or is supplemented, amended, waived or otherwise modified, other than with the consent of the Stalking Horse Purchaser Parties (as defined therein) to the extent such consent is required by the terms thereof;

viii.    Seller (A) withdraws or seeks authority to withdraw (x) the Approval Order at any time after the entry thereof or (y) any notice or motion seeking entry of the Approval Order at any time prior to the entry thereof, or (B) announces any stand-alone plan of reorganization or liquidation that does not contemplate the sale of the Acquired Interests in accordance with the Approval Order, in each case with respect to the Acquired Interests; or

ix.    the Bankruptcy Court has not entered the Approval Order on or before 75 days from the Petition Date or the Approval Order ceases to be in full force and effect or shall have been stayed, reversed, modified, or amended in any material respect in a manner adverse to the Purchaser without the prior written consent of Purchaser.

In the event of any termination of this Agreement by the Seller or the Purchaser as provided above, this Agreement shall forthwith become void and of no further force and effect, except for any rights of any party relating to any breaches of the representations, warranties or covenants of this Agreement prior to the time of such termination and the covenants, agreements and obligations of the Parties set forth in Section 8, Section 15 and this section shall survive any such termination and shall be enforceable hereunder.

**8.**    **No Survival; As is Where is; Limitations on Damages.**

a.    *No Survival*.  None of the representations or warranties of the Purchaser or the Seller set forth in this Agreement or in any certificate delivered pursuant to this Agreement shall survive, and each of the same shall terminate as of, the Closing.  In furtherance of the foregoing, after the Closing, neither Purchaser nor Seller shall bring a claim against the other party hereto for a breach of any such representations or warranties, and each Party hereby waives any such claims.

b.    *As Is Where Is*.  NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, PURCHASER ACKNOWLEDGES AND AGREES THAT SELLER IS NOT MAKING ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, BEYOND THOSE EXPRESSLY GIVEN BY THE SELLER IN SECTION 3 OF THIS AGREEMENT (AS MODIFIED BY THE SCHEDULES (IF ANY), AS SUPPLEMENTED OR AMENDED), AND PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN SECTION 3, THE ACQUIRED INTERESTS ARE BEING TRANSFERRED BY SELLER ON AN "AS IS," "WHERE IS" AND "WITH ALL FAULTS" BASIS AND WITHOUT REPRESENTATIONS, WARRANTIES OR GUARANTEES, EXPRESS, IMPLIED OR STATUTORY, WRITTEN OR ORAL, OF ANY KIND, NATURE OR DESCRIPTION, BY SELLER, ITS AFFILIATES OR THEIR RESPECTIVE REPRESENTATIVES.    ANY CLAIMS PURCHASER MAY HAVE FOR BREACH OF REPRESENTATION OR WARRANTY SHALL BE BASED SOLELY ON THE REPRESENTATIONS AND WARRANTIES OF SELLERS SET FORTH IN SECTION 3 (AS MODIFIED BY THE SCHEDULES (IF ANY), AS SUPPLEMENTED OR AMENDED). PURCHASER FURTHER REPRESENTS AND AGREES (I) THAT NEITHER SELLER NOR ANY OF ITS AFFILIATES, OR ANY OTHER PERSON HAS MADE ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE ACCURACY OR COMPLETENESS OF ANY INFORMATION REGARDING THE SELLER, THE ACQUIRED INTERESTS, THE COMPANY OR ITS BUSINESS OR THE TRANSACTIONS CONTEMPLATED HEREBY NOT EXPRESSLY SET FORTH IN THIS AGREEMENT, (II) PURCHASER, ITS AFFILIATES AND THEIR RESPECTIVE REPRESENTATIVES HAVE NOT RELIED ON ANY SUCH REPRESENTATIONS

OR WARRANTIES NOT EXPRESSLY SET FORTH IN THIS AGREEMENT AND (III) THAT SELLER HAS NOT BEEN NOR WILL BE, NOR WILL ANY OF ITS AFFILIATES OR ANY OTHER PERSON HAVE BEEN OR WILL BE, SUBJECT TO ANY LIABILITY TO PURCHASER OR ANY OTHER PERSON RESULTING FROM THE DISTRIBUTION TO PURCHASER, ITS AFFILIATES OR THEIR RESPECTIVE REPRESENTATIVES OR PURCHASER'S USE OF, ANY INFORMATION, INCLUDING ANY CONFIDENTIAL MEMORANDA OR REPORTS DISTRIBUTED ON BEHALF OF SELLER RELATING TO THE ACQUIRED INTERESTS, THE COMPANY OR ITS BUSINESS OR OTHER PUBLICATIONS OR DATA ROOM INFORMATION PROVIDED TO PURCHASER, ITS AFFILIATES OR THEIR RESPECTIVE REPRESENTATIVES, OR ANY OTHER DOCUMENT OR INFORMATION IN ANY FORM WHETHER WRITTEN OR ORAL PROVIDED TO PURCHASER, ITS AFFILIATES OR THEIR RESPECTIVE REPRESENTATIVES IN CONNECTION WITH THE SALE OF THE ACQUIRED INTERESTS AND THE TRANSACTIONS CONTEMPLATED HEREBY.  PURCHASER ACKNOWLEDGES THAT IT HAS CONDUCTED TO ITS SATISFACTION ITS OWN INDEPENDENT INVESTIGATION OF THE COMPANY, ITS BUSINESS AND THE ACQUIRED INTERESTS AND IN MAKING THE DETERMINATION TO PROCEED WITH THE TRANSACTIONS CONTEMPLATED HEREBY, PURCHASER HAS RELIED ON THE RESULTS OF ITS OWN INDEPENDENT INVESTIGATION AND THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH HEREIN AND NOT ON ANY OTHER REPRESENTATIONS OR WARRANTIES OF SELLER, ANY OF ITS AFFILIATES OR THEIR RESPECTIVE REPRESENTATIVES NOT SET FORTH HEREIN.  PURCHASER, ITS AFFILIATES AND THEIR RESPECTIVE REPRESENTATIVES HEREBY WAIVE ANY RIGHT OR CLAIM PURCHASER MAY HAVE AGAINST SELLER, INCLUDING ANY CLAIMS IN CONTRACT OR TORT REGARDING FRAUD, FRAUDULENT INDUCEMENT AND/OR INTENTIONAL OR NEGLIGENT MISREPRESENTATION, WITH RESPECT TO ANY INACCURACY OR INCOMPLETENESS OF ANY REPRESENTATIONS OR WARRANTIES NOT EXPRESSLY SET FORTH HEREIN.  EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN SECTION 3 (AS MODIFIED BY THE SCHEDULES (IF ANY)), SELLER HEREBY EXPRESSLY (I) DISCLAIMS AND NEGATES ANY REPRESENTATION OR WARRANTY, EXPRESSED OR IMPLIED, AT COMMON LAW, BY STATUTE, OR OTHERWISE, RELATING TO THE CONDITION OF THE ACQUIRED INTERESTS OR THE COMPANY (INCLUDING ANY IMPLIED OR EXPRESSED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS) AND (II) DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, PROJECTION, FORECAST, STATEMENT OR INFORMATION MADE, COMMUNICATED, OR FURNISHED (ORALLY OR IN WRITING) TO PURCHASER, ITS AFFILIATES OR THEIR RESPECTIVE REPRESENTATIVES (INCLUDING ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN OR MAY BE PROVIDED TO PURCHASER BY ANY DIRECTOR, MANAGER, OFFICER, EMPLOYEE, AGENT, CONSULTANT OR REPRESENTATIVE OF SELLER OR ANY OF ITS AFFILIATES).  EACH PARTY AGREES THAT THE DISCLOSURE OF ANY MATTER OR ITEM IN ANY SCHEDULE SHALL NOT BE DEEMED TO CONSTITUTE AN ACKNOWLEDGMENT THAT ANY SUCH MATTER IS REQUIRED TO BE DISCLOSED OR IS MATERIAL OR THAT SUCH MATTER WOULD BE REASONABLY LIKELY TO RESULT IN A MATERIAL ADVERSE CHANGE.

c.    *Maximum Liability.*  NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT, IF THE CLOSING OCCURS, IN NO EVENT SHALL SELLER'S AGGREGATE LIABILITY FOR LOSSES ARISING OUT OF OR RELATING TO THIS

AGREEMENT, THE TRANSACTION DOCUMENTS OR THE TRANSACTIONS, WHETHER RELATING TO A BREACH OF A REPRESENTATION AND WARRANTY, COVENANT, AGREEMENT OR OBLIGATION IN THIS AGREEMENT AND WHETHER BASED ON CONTRACT, TORT, STRICT LIABILITY, OTHER LAWS OR OTHERWISE, EXCEED SELLER'S LIABILITY CAP; PROVIDED, HOWEVER, THAT, SUCH LIMITATION ON LIABILITY SHALL NOT APPLY TO ANY SUCH LOSSES RESULTING FROM, ARISING OUT OF OR RELATING TO ANY FEES AND EXPENSES OWED TO ANY PERSON WHO HAS ACTED, DIRECTLY OR INDIRECTLY, AS A BROKER, FINDER OR FINANCIAL ADVISOR TO SELLER IN CONNECTION WITH THE TRANSACTIONS (WHICH LOSSES SHALL BE LIMITED TO THE ACTUAL DOLLAR AMOUNT OF SUCH FEES AND EXPENSES). THE PARTIES AGREE THAT SELLER'S LIABILITY CAP IS AN AMOUNT THAT IS REASONABLE IN LIGHT OF THE ANTICIPATED OR ACTUAL HARM CAUSED BY ANY SUCH BREACH CONTEMPLATED ABOVE, THE DIFFICULTIES OF PROOF OF LOSS ARISING FROM SUCH BREACH, AND THE INCONVENIENCE OR INFEASIBILITY OF OTHERWISE OBTAINING AN ADEQUATE REMEDY FOR SUCH BREACH.

       d.    *Limitation of Damages*. NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT, NO PARTY SHALL BE LIABLE FOR SPECIAL, PUNITIVE, EXEMPLARY, INCIDENTAL, CONSEQUENTIAL OR INDIRECT DAMAGES (INCLUDING LOSS OF REVENUE, INCOME OR PROFITS BUT ONLY TO THE EXTENT THE SAME ARE NOT DIRECT DAMAGES), DIMINUTION OF VALUE OR LOSS OF BUSINESS REPUTATION OR OPPORTUNITY OF ANY OTHER PARTY OR ANY OF SUCH PARTY'S AFFILIATES, WHETHER BASED ON CONTRACT, TORT, STRICT LIABILITY, OTHER LAW OR OTHERWISE; PROVIDED, HOWEVER, THAT SUCH LIMITATIONS SHALL NOT LIMIT ANY PARTY'S RIGHT TO RECOVER CONTRACT DAMAGES IN CONNECTION WITH THE OTHER PARTY'S FAILURE TO CLOSE IN VIOLATION OF THIS AGREEMENT.

       9.    <u>**Release.**</u>

       a.    Subject to the satisfaction of the terms and conditions set forth herein, as of the Closing Date, the Seller hereby releases, remises, acquits and forever discharges the Purchaser, and its current and former shareholders, officers, employees, agents, representatives, Affiliates, heirs, successors and assigns, from any and all manner of actions and causes of action, suits, debts, obligations, choses in action, contracts, torts, covenants, claims, rights of contribution and/or indemnification, rights of subrogation, sums of money, judgments, executions, liabilities, damages, interest, fees, distributions, costs, expenses, demands and rights whatsoever ("<u>Claims</u>"), based on facts existing at the date hereof, contingent or noncontingent, at law or in equity, known or unknown, previously existing, now existing or which may hereafter arise or exist, solely to the extent such Claims were or could have been asserted with regard to the Acquired Interests and/or the Seller's ownership interest in the Company. Following the Closing, the Seller shall have no further rights to any distributions, profits, allocations or any other amounts relating to the Acquired Interests.

       b.    Subject to the satisfaction of the terms and conditions set forth herein, as of the Closing Date, the Purchaser for itself, and after the Closing, the Company, hereby releases, remises, acquits and forever discharges the Seller, and its current and former shareholders, officers, employees, agents, representatives, Affiliates, heirs, successors and assigns, from any and all Claims, based on facts existing at the date hereof, contingent or noncontingent, at law or in equity, known or unknown, previously existing, now existing or which may hereafter arise or exist, solely to the extent such Claims were or could have been asserted with regard to the Acquired Interests and/or the Seller's ownership

interest in the Company. Following the Closing, the Seller shall have no further obligations to make any contributions to the Company or to the provide the Company with money or other property as a result of the Seller's ownership of the Acquired Interests prior to Closing, any such obligations being hereby assumed by the Purchaser.

10.    **Manager, Director and Officer Liability and Indemnification.**  For a period of six (6) years following the Closing Date, the Purchaser shall cause the Company not to amend, repeal or modify any provision in the Company's articles of organization, certificate of formation, limited liability company agreement or operating agreement in a manner which would impair the exculpation or indemnification of former managers, officers or directors of the Company as in effect immediately prior to the Closing, it being the intent of the Parties that the managers, officers and directors of the Company prior to the Closing shall continue to be entitled to such exculpation and indemnification to the fullest extent permitted under applicable law.   Notwithstanding anything contained in this Agreement to the contrary, this Section 10 shall survive the Closing for a period of six (6) years.  In the event that the Purchaser or any of its successors or assigns consolidates with or merges into any other Person, then the successors and assigns of the Purchaser shall expressly assume and be bound by the obligations set forth in this Section 10.   Any and all managers, officers and directors and former managers, officers and directors shall be express third party beneficiaries of this Section 10 and shall be entitled to enforce its terms notwithstanding that no managers, officers or directors or former officers or directors are a party to this Agreement.

11.    **Confidentiality.**  From and after the Closing Date until the one year anniversary date of this Agreement, the Seller hereby agrees to hold in confidence all Confidential Information of the Company which the Seller acquired as a result of being the sole member of the Company and not disclose any such Confidential Information to any third party without the prior written consent of the Company.  For purposes hereof, "Confidential Information" shall mean all confidential or proprietary information of the Company or relating to its services, processes, practices, trade secrets, inventions, developments, improvements, financial information and other information relating to the business of the Company; *provided*, *however*, in no event shall Confidential Information include any information (a) which is in or becomes part of the public domain through no violation of this Agreement or (b) which the Seller is required to disclose by law or in connection with the Bankruptcy Case, or (c) which becomes available to the Seller on a non-confidential basis from a source other than the Company so long as such source is not known by the Seller to be bound by a contractual obligation of confidentiality to the Company or the Purchaser; *provided*, *however*, if the Seller is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) at any time to disclose any Confidential Information to any third party, the Seller shall provide the Purchaser and the Company with reasonably prompt written notice of such request(s) so that the Purchaser and/or the Company may seek an appropriate protective order and/or take whatever steps as may be reasonably necessary to resist or narrow such request or to ensure that confidential treatment will be accorded any such disclosure.  The Parties hereby acknowledge and agree that the provisions of this Section 11 are reasonable and necessary to protect the interests of the Purchaser and the Company in the Confidential Information and that a breach of this Agreement by the Seller would result in irreparable damage to the Purchaser and the Company for which a remedy at law would not be adequate.  In the event of any such breach, in addition to any other remedy provided herein or law or in equity, the Purchaser and the Company shall be entitled to specific enforcement of the terms hereof, including, without limitation, appropriate injunctive relief restraining the Seller from any such breach or threatened breach, and that no notice, bond or other security shall be required in connection therewith.

12.    **Additional Documents; Access.**    At any time and from time to time (whether before or after the Closing Date), each of the Parties shall, upon the reasonable request of the other, promptly execute, acknowledge, and deliver, or cause to be executed, acknowledged, and delivered, such further instruments and other documents, and perform or cause to be performed such further acts, as may be reasonably necessary or desirable to evidence or effectuate the transactions contemplated hereby and to carry out the purposes and intent of this Agreement.    After the Closing, in the event that the Seller shall reasonably require access to certain books, files and/or records of the Company for tax or accounting purposes or to respond to third party claims against the Seller, the Purchaser shall provide to the Seller (after reasonable notice and during normal business hours and without charge to the Seller) reasonable access to those books, files and/or records related to the Company which are reasonably necessary for such tax or accounting purposes or to respond to such third party claims ("Company Records") for periods prior to the Closing and shall preserve such Company Records until the later of (a) six (6) years after the Closing Date and (b) such later date that is required by applicable law.    Such access shall include access to information in electronic form to the extent reasonably available.

13.    **Bankruptcy Matters**.

    a.    *Competing Transaction*.    This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing offers and bids for the Acquired Interests.    Subject to the terms and conditions of the Bidding Procedures Order, Seller is permitted to cause its representatives and Affiliates to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser and its Affiliates, agents and representatives) in connection with any sale or other disposition of the Acquired Interests.    In addition, Seller may respond to any inquiries or offers to purchase all or any part of the Acquired Interests and perform any and all other acts related thereto that are required under the Bankruptcy Code, the Bidding Procedures Order or other applicable Law, including supplying information relating to the Company, its business or the Acquired Interests or any of their Affiliates to prospective purchasers.

    b.    *Bankruptcy Court Filings*.    Subject to Purchaser being designated as the Successful Bidder, Seller shall promptly use commercially reasonable efforts to obtain entry of the Approval Order approving this Agreement and authorizing the transactions contemplated hereby, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.    Purchaser shall not, without the prior written consent of Seller, file, join in or otherwise support in any manner whatsoever any motion or other pleading relating to the sale of the Acquired Interests.    In the event the entry of the Sale Order or the Bidding Procedures Order shall be appealed, Seller and Purchaser shall use their respective commercially reasonable efforts to defend such appeal.    The Approval Order is an order of the Bankruptcy Court that is covered by Section 303 of the DGCL.    Pursuant to Section 303 of the DGCL, the Seller may consummate the transactions contemplated by this Agreement, including selling, transferring and assigning the Acquired Interests to the Purchaser, approved and authorized by the Approval Order without any action by the Seller's Board of Directors or Seller's stockholders.

    c.    *Back-up Bidder*.    Seller and Purchaser agree that, in the event that Purchaser is not the Successful Bidder at the Auction, and the Alternative Transaction with the Successful Bidder does not close, if and only if Purchaser is the Back-up Bidder, Purchaser shall promptly consummate the transactions contemplated hereby upon the terms and conditions as set forth herein, including the

Purchase Price as the same may be modified by Purchaser at the Auction. Purchaser acknowledges that time is of the essence in achieving Closing and shall undertake all commercially reasonable efforts to reach Closing in a timely manner.

        *d.*    *Notice to Notice Parties.* Notice of the hearing on the Approval Motion, and request for entry of the Approval Order and the objection deadline shall be served by Sellers in accordance with the Bankruptcy Code and Bankruptcy Rules, including Bankruptcy Rules 2002, 6004, 6006 and 9014, any applicable local rules of the Bankruptcy Court and any orders of the Bankruptcy Court on (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Creditors' Committee (if any); (iii) all holders of claims against and equity interests in the Seller actually known to Seller, and (iv) all parties that have filed and not withdrawn requests for notices pursuant to Bankruptcy Rule 2002.

      **14.**   **Severability.** In case any one or more of the provisions of this Agreement should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

      **15.**   **Governing Law; Jurisdiction; Jury Trial Waiver.**

        *a.*    *Governing Law; Submission to Jurisdiction.* This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of Delaware (without giving effect to the principles of conflict of Laws thereof), except to the extent that the laws of such State are superseded by Title 11 of the United States Code. For so long as the Seller is subject to the jurisdiction of the Bankruptcy Court, the Parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After the Seller is no longer subject to the jurisdiction of the Bankruptcy Court, any legal action or proceeding with respect to this Agreement or the transactions contemplated hereby shall be brought in the Chancery Court of the State of Delaware sitting in New Castle County, Delaware, or if such court does not have subject matter jurisdiction, any other state court of the State of Delaware or United States federal court sitting in the District of Delaware, with subject matter jurisdiction, and by execution and delivery of this Agreement, each of the Parties consents to the non-exclusive jurisdiction of those courts. Each of the Parties irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens,* which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or the transactions contemplated hereby.

        *b.*    *WAIVER OF RIGHT TO TRIAL BY JURY.* EACH PARTY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING BASED UPON, ARISING OUT OF, OR RELATED TO THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENT, ANY PROVISION HEREOF OR THEREOF OR ANY OF THE TRANSACTIONS.

      **16.**   **Notices.** All notices, requests, demands and other communications which are required to be or may be given under this Agreement shall be in writing and shall be deemed to have been duly given (a) when delivered in person or transmitted by electronic mail, (b) three (3) days after deposit by certified or registered first class mail, postage prepaid, return receipt requested, or (c) on the day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service, to the Party to whom the same is so given or made, postage prepaid and properly addressed, to the Party as follows:

Execution Version

If to the Purchaser, to:            c/o SunTx Fulcrum Fund Prime, LP
Two Lincoln Center, Suite 1000
5420 LBJ Freeway
Dallas, TX 75240
Attn: Craig J Jennings, CFO
Email:  cjennings@suntx.com

AND                         c/o Prudential Private Capital
Two Prudential Plaza
180 N. Stetson Avenue
Suite 5600
Chicago, IL 60601
Attention:  Managing Director, Corporate Finance
Email:  nikolas.miller@prudential.com

With a copy (which shall not constitute notice) to:

Haynes & Boone
2323 Victory Avenue
Suite 700
Dallas, TX 75219
Attn:  Paul Amiel
Frasher Murphy
Email:  paul.amiel@haynesboone.com
Frasher.Murphy@haynesboone.com

AND                         Schiff Hardin LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Attn: Kevin Knohl
   Steven Wilamowsky
Email:  kknohl@schiffhardin.com
SWilamowsky@schiffhardin.com

If to the Seller, to:              3773 Corporate Center Drive
Earth City, MO 63045
Attn:  Kenneth Obermeyer
Email: ken.obermeyer@interfacesys.com

With a copy (which shall not constitute notice) to:

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attention:      Michael J. Merchant
        Paul N. Heath
        Mark A. Kurtz

Amanda R. Steele

Email:  merchant@rlf.com
        heath@rlf.com
        kurtz@rlf.com
        steele@rlf.com

or to such other address or email address as such Party shall have specified by notice to the other Party hereto.

17.  **Expenses.**  The Purchaser and the Seller shall each be solely responsible for and pay their own respective expenses and the fees and expenses of their respective counsel, accountants and other experts incurred in connection with this Agreement and the transactions contemplated hereby.

18.  **Binding Effect; Benefits; Assignment.**  This Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective successors and permitted assigns, heirs and legal representatives.  Except as provided for by Section 10, nothing in this Agreement, express or implied, is intended to confer on any Person other than the Parties hereto or their respective successors and permitted assigns, heirs and legal representatives any rights, remedies, obligations, or liabilities under or by reason of this Agreement and the Company solely with respect to Section 11 on and after the Closing Date.  No Party may assign its rights or obligations hereunder without the prior written consent of the other Parties.

19.  **Counterparts.**  This Agreement may be executed (whether by hand or electronically) in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.  Signature pages to this Agreement or any document delivered in connection herewith or at the Closing, to the extent delivered by facsimile, pdf file format or similar reproduction of such signed writing using electronic mail or other electronic transmission means shall be binding to the same extent as an original.

20.  **Entire Agreement.**  This Agreement, together with the Exhibits and other agreements delivered pursuant hereto, constitute the entire agreement of the Parties with respect to the subject matter hereof and supersede any and all prior understandings and agreements with respect to the subject matter hereof.  This Agreement may not be modified or changed except by an instrument or instruments in writing signed by the Party against whom enforcement of any such modification or amendment is sought.

21.  **Injunctive Relief.**  Each Party agrees that any breach of this Agreement would constitute irreparable harm and damages at law are an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement, and, accordingly, either Party is entitled to injunctive relief with respect to any such breach, including specific performance of such covenants or obligations or an order enjoining a Party from any threatened, or from the continuation of any actual, breach of the covenants or obligations contained in this Agreement.  Each Party hereby waives any requirement for the securing or posting of any bond in connection with any such injunctive relief.  The rights set forth in this Section 21 shall be in addition to any other rights that a Party may have at law or in equity pursuant to this Agreement.

22.  **Remedies Cumulative**.  All remedies arising out of this Agreement are cumulative and are not exclusive of any other remedies provided by law.

23.    <u>**Cessation of Seller's Existence**</u>.  Notwithstanding any provision contained in this Agreement, no provision in this Agreement shall require or necessitate Seller to remain a validly existing entity beyond the Closing or to take any action, perform any obligations, or comply with any terms or covenants set forth in this Agreement after the Closing if Seller's entity existence has ceased or has been cancelled.

24.    <u>**Non-Recourse.**</u>  No past, present or future director, officer, employee, agent, advisor or counsel, incorporator, member, manager, partner, creditor, stockholder, interest holder or other Affiliate of Seller shall have any liability under this Agreement or any of the other documents, agreements or instruments executed and delivered in connection with this Agreement (the "Transaction Documents") for any obligations or liabilities of Seller under this Agreement or the other Transaction Documents or for any claim based on, in respect of, or by reason of, the transactions contemplated hereby, the Transaction Documents or otherwise.

25.    <u>**Privileged Communications.**</u>  Seller and Purchaser hereby acknowledge and agree that notwithstanding any provision of this Agreement, neither Purchaser nor any of its Affiliates shall have access to (and each hereby waives any right of access it may otherwise have with respect to) any Privileged Communications, whether or not the Closing occurs.  Prior to the Closing, Seller shall cause the Company to transfer all Privileged Communications to Seller (the "Privileged Communications Transfer").  Without limiting the generality of the foregoing, Purchaser hereby acknowledges and agrees, upon and after the Closing: (i) neither Purchaser nor any of its Affiliates shall be a holder of, or have any right, title or interest to the Privileged Communications, (ii) only Seller shall hold property rights in the Privileged Communications and shall have the right to waive or modify such property rights and (iii) Seller shall have no duty whatsoever to reveal or disclose any Privileged Communications to Purchaser or any of its Affiliates.   To the extent that any Privileged Communications are disclosed or made available to Purchaser, the Parties hereby agree (i) that the disclosure, receipt and/or review of such Privileged Communication is entirely inadvertent and shall not waive, modify, limit or impair in any form or fashion the protected nature of the Privileged Communications, (ii) it is their desire, intention and mutual understanding that the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, common interest privilege, work product doctrine or other applicable privilege and (iii) Seller shall have the right in its sole discretion and at any time to require the return and/or destruction of the Privileged Communications.

26.    <u>**Certain Terms Defined.**</u>  As used in this Agreement, the following terms shall have the following meanings:

"<u>Affiliate</u>" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such first Person, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a Person, through the ownership of voting securities, by contract, as trustee, executor or otherwise.

"<u>Alternative Transaction</u>" means a transaction or series of related transactions pursuant to which Seller accepts a bid for all or a substantial and material portion of the Acquired Interests or any group of assets that includes all or a substantial and material portion of the Company's assets, from a Person other than Purchaser or any Affiliate of Purchaser (or a group or joint venture that includes Purchaser or any Affiliate of Purchaser), as the highest or best offer, in accordance with the Bidding Procedures Order or otherwise, but does not mean the sale of goods or services of the Company

conducted in the Company's ordinary course of business.

"Auction" means that certain auction, if any, conducted pursuant to the terms of the Bidding Procedures Order.

"Back-up Bidder" means has the meaning set forth in the Bidding Procedures Order.

"Bidding Procedures Order" means an order of the Bankruptcy Court that, among other things, establishes a date by which qualified bids meeting the requirements approved in the Bidding Procedures Order must be submitted by bidders and establishes procedures for the Auction process.

"Claim" means "claim" as defined in section 101(5) of the Bankruptcy Code.

"Credit Bid" means a bid by Buyer pursuant to Section 363(k) of the Bankruptcy Code equal to the full amount of the outstanding DIP Obligations as of the Closing Date.

"Credit Bid And Release" has the meaning set forth in Section 1.

"Creditors' Committee" means any statutory committee of unsecured creditors appointed by the U.S. Trustee in the Bankruptcy Case pursuant to section 1102 of the Bankruptcy Code, as may be reconstituted from time to time.

"DIP Lenders" means the Purchasers (as defined in the DIP Loan Agreement).

"DIP Loan" has the meaning set forth in the DIP Facility Agreement.

"DIP Facility Agreement" means that certain $5,000,000 First Lien Senior Secured Note Facility Term Note Agreement, dated as of November 11, 2020, made by the Seller and the DIP Lenders.

"DIP Obligations" means the Obligations (as defined in the DIP Facility Agreement).

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

"Government" means any agency, division, subdivision, audit group, procuring office or governmental or regulatory authority in any event or any adjudicatory body thereof, of the United States, any state thereof or any foreign government.

"ISS Guaranteed Obligations" means the Seller's guarantee obligations (a) under the Credit Agreement, dated as of August 7, 2019, with U.S. Bank National Association, as the administrative agent, Capital One, National Association, as revolver agent, and the lenders party thereto, as amended by the First Amended and Waiver to Credit Agreement, dated as of October 4, 2019, the Second Amendment to Credit Agreement, dated as of December 9, 2019 and the Omnibus Amendment to the Loan Documents and Forbearance Agreement, dated as of April 14, 2020 (as further modified, amended or supplemented from time to time and (b) under the Securities Purchase Agreement, dated August 2, 2017, among the Seller, Interface Special Holdings, Inc., a Delaware corporation, the

Company, and the purchasers party thereto, as amended, restated, supplemented or otherwise modified from time to time.

"Loss" means any actual losses, liabilities, claims, damages or expenses (excluding any costs of investigation or defense, attorneys' fees and expenses) of a Party arising from or in connection with a breach or alleged breach by the other Party of this Agreement or the Transaction Documents, or other claim arising out of or in connection with this Agreement or the Transaction Documents.

"Material Adverse Change" means, unless the context expressly provides otherwise, a material adverse change in the business of the Company that is (A) outside of the control of the management of the Company and that arises out of any fact, event, circumstance or condition that has not occurred or was not in existence prior to the date hereof, and (B) not the result of any event, occurrence, circumstance or condition of which the Company's management has knowledge as of the date hereof, provided, however, that in determining whether a Material Adverse Change has occurred, there shall not be taken into account any effect resulting from (i) any change in economic or business conditions generally, financial markets generally or in the industry or markets in which the Company operates or is involved, (ii) any change in general legal, regulatory or political conditions, including any commencement, continuation or escalation of war, material armed hostilities or terrorist activities or other material international or national calamity or act of terrorism directly or indirectly involving or affecting the United States, (iii) any change arising from or related to the COVID-19 pandemic or any other pandemic or endemic affecting the United States or its citizens located within its territories, (iv) any changes in accounting rules or principles (or any interpretations thereof), including changes in GAAP, (v) any change in any laws, (vi) the announcement of the execution of this Agreement or the sale of the Acquired Interests, or the pendency of or consummation of the transactions contemplated hereby, or any actions required to be taken hereunder or under any of the Transaction Documents, to the extent due to the announcement or the performance of this Agreement or the other Transaction Documents or the identity of Purchaser, or the consummation of the transactions contemplated hereby, (vii) any failure to meet any internal or public forecasts, projections, predictions, guidance, estimates, milestones or budgets (provided that any underlying cause for such failure shall not be excluded solely by operation of this clause), and (viii) the pendency of the Bankruptcy Case and any action approved by, or motion made before, the Bankruptcy Court.

"Person" means any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated organization or Government.

"Pledge Agreement" has the meaning specified in Section 3.a).

"Privileged Communications" means any attorney-client communications, confidences, files, work product or other communications related to the Seller Engagements.

"Restructuring Support Agreement" means the restructuring support agreement dated as of November 10, 2020, by and among the Seller, the Company, the Consenting Noteholders, the Consenting Lenders, and the Stalking Horse Purchaser Parties (as such parties are respectively defined therein).

"Seller Engagements" means any matters for which Seller, the Company or any of their Affiliates has engaged Richards, Layton & Finger, P.A., Imperial Group, LLC and Akin Gump Strauss

Execution Version

Hauer & Feld in connection with a possible negotiated transaction involving Seller or the Company and another Person, state or federal bankruptcy or insolvency proceeding, an out-of-court restructuring and/or any financing transaction.

"Seller's Liability Cap" means an amount not to exceed one percent (1.0%) of any cash consideration paid or required to be paid under this Agreement for payment of the Purchase Price.

"Successful Bidder" means any party who acquires all or substantially all of the Acquired Interests (in a single transaction or a series of transactions) by reason of having submitted the successful bid at the Auction in a manner consistent with and authorized by the Bidding Procedures Order, regardless of whether such party has acquired such membership interests for investment, strategic operation, liquidation or other purpose.

*[The remainder of the     page left intentionally blank.]*

**IN WITNESS WHEREOF,** the Parties have executed this Purchase and Sale Agreement as of the date first written above.

**SELLER:**

TRANSFORMATION TECH INVESTORS, INC.

By: _____
Name: Mark Pape
Title: Director, Authorized Person

**PURCHASER:**

INNOVATION TECH INVESTORS, INC.,

By: _____
Name:
Title:

**IN WITNESS WHEREOF,** the Parties have executed this Purchase and Sale Agreement as of the date first written above.

**SELLER:**

TRANSFORMATION TECH INVESTORS, INC.


By: _____
Name:
Title:



**PURCHASER:**

INNOVATION TECH INVESTORS, INC.


By: *Craig Jennings*
Name:   Craig J. Jennings
Title:    Chief Financial Officer

**EXHIBIT A**

**FORM OF**
**ASSIGNMENT, ACCEPTANCE AND ASSUMPTION AGREEMENT**

THIS ASSIGNMENT, ACCEPTANCE AND ASSUMPTION AGREEMENT (this "Assignment") is made and entered into by Transformation Tech Investors, Inc., a Delaware corporation ("Assignor"), and Innovation Tech Investors, Inc., a Delaware corporation ("Assignee"), effective as of [_____] (the "Effective Date").

RECITALS

WHEREAS, Assignor owns 100% of the membership interests (the "Membership Interests") in Interface Security Systems, LLC, a Louisiana limited liability company (the "Company");

WHEREAS, pursuant to that certain Purchase and Sale Agreement, dated as of [_____], 2020 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Agreement"), to which Assignor and Assignee are parties, Assignor agreed to assign, transfer, set over, deliver and convey to Assignee 100% of the Membership Interests in the Company (the "Acquired Interests");

WHEREAS, capitalized terms used herein without definition are used as defined in the Agreement; and

WHEREAS, this Assignment is executed and delivered by Assignor and Assignee in connection with the Closing under, and in accordance with, the Agreement.

NOW, THEREFORE, BE IT KNOWN THAT:

1.    Conveyance and Assignment.  For good and valuable consideration as set forth in the Agreement, effective as of the Effective Date, Assignor does hereby assign to Assignee the Acquired Interests, free and clear of all liens, encumbrances, forfeitures, pledges, penalties, charges, judgments, security interests, options, rights of first refusal, equities or claims or rights of others whatsoever as provided for in the Approval Order (other than (x) liens on the Acquired Interests securing the ISS Guaranteed Obligations and (y) liens that will attach to the proceeds of this sale under the Agreement pursuant to section 363 of the Bankruptcy Code or that will not survive Closing).  Assignor shall deliver to Assignee any documents necessary to transfer ownership of the Acquired Interests to Assignee.

2.    Acceptance of Assignment.  Effective as of the Effective Date, Assignee hereby accepts and assumes the assignment of the Acquired Interests as set forth above and agrees to perform and be bound by all the terms, conditions and covenants of and assumes the duties and obligations of Assignor with respect to the Acquired Interests, including, without limitation, the ISS Guaranteed Obligations.

3.    Conflict among Agreements.  In the event of a conflict between the terms and conditions of this Assignment and the terms and conditions of the Agreement, the terms and conditions of the Agreement shall govern, supersede and prevail.

4.    Titles and Captions.  All section or paragraph titles or captions in this Assignment are for convenience only, shall not be deemed part of this Assignment, and in no way define, limit, extend or describe the scope or intent of any provision hereof.

5.        <u>Further Assurances</u>.  Assignor covenants and agrees promptly to execute, deliver, file, or record, or cause to be executed, delivered, filed or recorded, such agreements, instruments, certificates and other documents and to do and perform such other and further actions as Assignee may reasonably request or as may otherwise be necessary, convenient or proper to assign, convey, transfer and deliver the Acquired Interests unto Assignee.

6.        <u>Counterparts</u>.  This Assignment may be executed in counterparts, including faxed counterparts.

7.        <u>Governing Law</u>.  This Assignment shall be governed by and construed in and interpreted in accordance with the laws of the State of Delaware.  Section 15 of the Agreement is hereby incorporated by reference.

*[The remainder of the page left intentionally blank.]*

A-2

       **IN WITNESS WHEREOF**, the parties hereto have executed this Assignment as of the date first set forth above.

Assignor:

**TRANSFORMATION TECH INVESTORS, INC.**
a Delaware corporation

By: _____
Name:
Title:

Assignee:

**INNOVATION TECH INVESTORS, INC.,**
a Delaware corporation

By: _____
Name:
Title:

**EXHIBIT B**

**Approval Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------- x
```
*In re*                                    :    **Chapter 11**
                                           :
**TRANSFORMATION TECH**                    :    **Case No. 20–12970 (___)**
**INVESTORS, INC.,**                       :
                                           :
          **Debtor.**[1]                   :
```
----------------------------------------------------------- x
```

**ORDER APPROVING SALE OF DEBTOR'S MEMBERSHIP**
**INTERESTS IN INTERFACE SECURITY SYSTEMS, L.L.C. FREE**
**AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND**
**ENCUMBRANCES, AND GRANTING RELATED RELIEF**

Upon the *Motion For Entry Of Orders: (I) (A) Establishing Bidding Procedures for Sale of Debtor's Membership Interests In Interface Security Systems, L.L.C., (A) Authorizing Entry Into the Stalking Horse Agreement, (C) Scheduling Auction and Sale Hearing, (D) Approving Form and Manner of Notice Thereof, and (E) Granting Related Relief, and (II) Approving Sale of Debtor's Membership Interests in Interface Security Systems, L.L.C. Free And Clear Of All Liens, Claims, Interests, and Encumbrances, and Granting Related Relief* [ECF No. __] (the "Motion")[2] filed by the debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"); and upon the *Declaration of Mark Pape in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"); and upon the [*Order (I) Establishing Bidding Procedures for Sale of Debtor's Membership Interests in Interface Security Systems, L.L.C., (II) Authorizing Entry Into the Stalking Horse Agreement, (III) Scheduling Auction and Sale Hearing, (IV) Approving Form and Manner of Notice Thereof, and (V) Granting Related*

---

[1] The Debtor was formerly known as Interface Preferred Holdings, Inc.  The last four digits of the Debtor's federal tax identification number are (6677) and the Debtor's corporate headquarters and service address is 3773 Corporate Center Dr., Earth City, MO 63045.

[2] Capitalized terms used but not defined in this Order have the meanings given to such terms in the Motion.

*Relief*] [ECF No. ___] (the "<u>Bidding Procedures Order</u>") approving, *inter alia*, the Bidding

Procedures annexed thereto as <u>Exhibit 1</u> (the "<u>Bidding Procedures</u>"); and upon the [NOTICE],

designating the Stalking Horse Bidder as the Successful Bidder for the Acquired Interests (as

defined in the Stalking Horse Agreement) pursuant to the Stalking Horse Agreement, [as modified

in the form annexed hereto as <u>Exhibit 1</u> (as so modified, the "<u>Purchase Agreement</u>");] and the Sale

Hearing having been held on [_____, __, 2020] to consider the remaining relief requested in the

Motion and approval of the Stalking Horse Agreement; and upon all of the proceedings had before

this Court, including the testimony and other evidence proffered or adduced at the Sale Hearing;

and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* of the United States Court for the District of Delaware,

dated February 29, 2012; and this Court having the authority to enter an order consistent with

Article III of the United States Constitution; and venue of this proceeding and the Motion in this

district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the relief requested in the Motion

being in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the

Debtor's notice of the Motion having been provide in accordance with the Noticing Procedures

and being otherwise proper, timely, adequate and sufficient under the circumstances; and this

Court having determined that the legal and factual bases set forth in the Motion and at the Sale

Hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; and after due deliberation and sufficient cause appearing therefor,

　　　　IT IS HEREBY FOUND AND DETERMINED THAT: [3]

---

[3] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

2

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This Order (this "Approval Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a).

D.      The statutory predicates for the relief requested in the Motion are: (i) sections 105(a) and 363of the Bankruptcy Code; and (ii) Bankruptcy Rules 2002 and 6004.

E.      Proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and in compliance with the Noticing Procedures, including to the Sale Notice Parties.  Such notice was proper, timely, adequate and sufficient under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the Purchase Agreement or the sale transaction contemplated by the Purchase Agreement (the "Sale Transaction") is required.

F.      A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto, including the Sale Transaction, has been afforded to creditors and other interested persons, substantially in accordance with the Noticing Procedures.

G.      As demonstrated by: (i) the First Day Declaration; (ii) the testimony and other evidence proffered or adduced at the hearing held with respect to the approval of the Bidding held on November [__], 2020 (the "Bidding Procedures Hearing") and the Sale Hearing; and (iii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, the Debtor and its advisors thoroughly marketed the Acquired Interests and conducted the marketing and sale process as set forth in and in accordance with the Motion and the Bidding Procedures Order.  Based upon the record of these proceedings, all creditors and other parties in

3

interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Interests.

H.    <u>Compliance with Bidding Procedures</u>:  The Debtor conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best offer for the Acquired Interests in compliance with the Bidding Procedures Order.  The sale process and the Bidding Procedures were non-collusive, substantively and procedurally fair to all parties and to each person or Entity that desired to participate in the Auction and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer for the Acquired Interests.  The Bidding Procedures, as they may have been amended or modified, have been complied with in all material respects by the Debtor and the Purchaser.

I.    [<u>Highest and Best Offer</u>:  After the conclusion of the Auction held on [_____ __, 2020] and in accordance with the Bidding Procedures, the Debtor determined in a valid and sound exercise of their business judgment that the highest and best Qualified Bid (as defined in the Bidding Procedures) for the Acquired Interests was that of the Purchaser.  The consideration provided by the Purchaser for the Acquired Interests provides fair and reasonable consideration to the Debtor for the sale of the Acquired Interests, and the performance of the other covenants set forth in the Purchase Agreement will provide a greater recovery for the Debtor's estate than would have been provided by any other available alternative.]

J.    <u>Court Approval Required</u>.  Entry of an order approving and authorizing the Debtor's entry into the Purchase Agreement and all ancillary documents filed therewith or described therein and the Debtor's performance of all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Sale Transaction.

RLF1 24301008v.1

K.    <u>Business Judgment</u>:    The Debtor's decisions to: (i) enter into the Purchase Agreement and all ancillary documents filed therewith or described therein; and (ii) perform under the Purchase Agreement, constitute reasonable exercises of the Debtor's sound business judgment consistent with its fiduciary duties and is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.    Good and sufficient reasons for the approval of the Purchase Agreement and all ancillary documents filed therewith or described therein have been demonstrated by the Debtor.    The Debtor has demonstrated compelling circumstances for the Sale Transaction outside:    (i) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (ii) a plan of reorganization, in that, among other things, the prompt consummation of the Sale Transaction is necessary and appropriate to preserve and maximize the value of the Debtor's sole material asset, the Acquired Interests.    To maximize the value of the Acquired Interests and preserve the viability of the business to which the Acquired Interests relate, it is essential that the Sale Transaction occur promptly.

L.    <u>Sale Free and Clear</u>:    A sale of the Acquired Interests other than one free and clear of any and all liens, defenses (including rights of setoff and recoupment) and interests, including security interests of whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state and local taxes), covenants, restrictions, indentures, instruments, leases, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, alter ego and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law, in each case, of any kind or nature (including all "claims"

5

as defined in section 101(5) of the Bankruptcy Code), known or unknown or arisen or accrued, whether prepetition or postpetition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Encumbrances") and without the protections of this Approval Order would hinder the Debtor's ability to obtain the consideration provided for in the Purchase Agreement and, thus, would impact materially and adversely the value that the Debtor's estates would be able to obtain for the sale of such Acquired Interests.  In addition, any entity known to hold an Encumbrance upon the Acquired Interests: (i) has consented to the Sale Transaction or is deemed to have consented to the Sale Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their Encumbrances, if any, attach to the proceeds of the Sale Transaction, in the same order of priority and with the same validity, force and effect that such Encumbrances had before the Sale Transaction, subject to any rights, claims and defenses of the Debtor and its estate.  Therefore, approval of the Purchase Agreement and the consummation of the sale of the Acquired Interests free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code.

M.    <u>Arms'-length Sale</u>:  As set forth in the Motion and adduced at the Sale Hearing, the Stalking Horse Agreement, and the subsequent Purchase Agreement, was negotiated on behalf of the Debtor solely by the Special Committee, which consists of only members of the Debtor's board of directors that are not affiliated with the Purchaser or who may otherwise have an interest in the Sale Transaction.  The consideration to be paid by the Purchaser under the Purchase Agreement was negotiated between the Special Committee, the Purchaser (and/or its affiliate representatives) at arm's-length, is otherwise "entirely fair" to the Debtor, and constitutes reasonably equivalent value and fair and adequate consideration for the Acquired Interests under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and the laws of the United States, any state, territory, possession thereof or the District of Columbia.  The terms and conditions set forth in the Purchase Agreement and all ancillary documents filed therewith or described therein are fair and reasonable under the circumstances of the Chapter 11 Case and were not entered into with the intent to nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtor or its creditors under any applicable laws.  Neither the Debtor or the Purchaser is entering into the Purchase Agreement and the ancillary documents filed therewith and described therein or proposing to consummate the Sale Transaction fraudulently, for the purpose of statutory or common law fraudulent conveyance, fraudulent transfer claims, preference claims or avoidance action claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction.

N.    <u>Good Faith</u>:  The Debtor, its management, employees, and representatives, and the Purchaser, and its management, employees, and representatives, respectively acted in good faith with respect to all events leading to the Purchase Agreement and that will culminate in the Sale

Transaction.  The Purchase Agreement was negotiated and entered into without collusion or fraud, and in good faith as that term is used in section 363(m) of the Bankruptcy Code.  The Purchaser is entering into the Sale Transaction in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the court decisions applying or interpreting such provision, and is therefore entitled to the full protection of section 363(m) of the Bankruptcy Code with respect to all aspects of the Sale Transaction.  Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Sale Transaction, the Purchase Agreement, or any related action or the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of section 363(m) of the Bankruptcy Code.

O.    <u>Corporate Authority</u>:  Upon entry of this Approval Order, the Debtor shall have: (i) full corporate or other power to execute, deliver and perform its obligations under the Purchase Agreement and all other transactions contemplated thereby and entry into the Purchase Agreement has been duly and validly authorized by all necessary corporate or similar action; (ii) all of the corporate or other power and authority necessary to consummate the Sale Transaction; and (iii) take all actions necessary to authorize and approve the Purchase Agreement and the Sale Transaction.  No consents or approvals, other than those expressly provided for herein or in the Purchase Agreement, are required for the Debtor to consummate such transaction.

P.    The Purchaser shall have no obligations with respect to any Encumbrances against or in respect of any of the Debtor or the Acquired Interests.

Q.    The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m) and 363(n) of the Bankruptcy Code.

8

R.      The Acquired Interests constitute property of the Debtor's estate and title thereto is presently vested in the Debtor within the meaning of section 541(a) of the Bankruptcy Code.  The sale of the Acquired Interests to the Purchaser will be, as of the date such Acquired Interests are transferred under the Purchase Agreement, a legal, valid and effective transfer of such Acquired Interests, and will vest the Purchaser with all right, title and interest of the Debtor to the Acquired Interests free and clear of all Encumbrances.

S.      No Successor Liability:  No sale, transfer or other disposition of the Acquired Interests pursuant to the Purchase Agreement or entry into the Purchase Agreement will subject the Purchaser to any liability for claims, obligations or Encumbrances asserted against the Debtor or the Debtor's interests in such Acquired Interests by reason of such transfer under any laws, including any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, *de facto* merger or substantial continuity or similar theories.  Accordingly, the Purchaser is not and shall not be deemed a successor to the Debtor or its estate as a result of the consummation of the Sale Transaction, and the Purchaser's acquisition of the Acquired Interests shall be free and clear of any successor liability claims of any nature whatsoever.  Purchaser would not acquire the Acquired Interests but for the protections against any claims based upon successor liability theories.

T.      No Sub Rosa Plan:  Entry into the Purchase Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtor's creditors, nor impermissibly dictate the terms of a chapter 11 plan of reorganization for the Debtor.  Entry into the Purchase Agreement does not constitute a *sub rosa* chapter 11 plan.

U.      No Third Party Beneficiaries.  Nothing in the Purchase Agreement creates any third party beneficiary rights in any entity not a party to the Purchase Agreement.

9

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

A.    <u>Motion Granted, Objections Overruled</u>

1.    The Motion is GRANTED as set forth herein.  Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled on the merits with prejudice and denied.  All parties and Entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

2.    This Court's findings of fact and conclusions of law in the Bidding Procedures Order and the record of the Bidding Procedures Hearing are incorporated herein by reference.

B.    <u>The Purchase Agreement Is Approved and Authorized</u>

3.    The Purchase Agreement, all ancillary documents filed therewith or described therein, and the Sale Transaction are approved pursuant to sections 105 and 363 of the Bankruptcy Code and Rules 2002, 4001, 6004 and 9014 of the Bankruptcy Rules.  The Debtor is hereby authorized and directed to perform under this Approval Order and the Purchase Agreement and all ancillary documents filed therewith or described therein (and each of the transactions contemplated thereby is hereby approved in its entirety and is incorporated herein by reference).  The failure to include specifically any particular provision of the Purchase Agreement in this Approval Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Purchase Agreement, and all of its provisions and the payments and transactions provided for therein, shall be authorized and approved in their entirety.  All of the provisions of this Approval Order are non-severable and mutually dependent.

10

4. Subject to the provisions of this Approval Order, the Debtor and the Purchaser are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to consummate the Sale Transaction in accordance with the Purchase Agreement and all ancillary documents filed therewith or described therein.

5. Pursuant to section 363(b) of the Bankruptcy Code, and without any further corporate action or orders of this Court, the Purchaser and each of its respective officers, employees, agents, members and managers are hereby authorized to, and the Debtor and each of its respective officers, employees, agents, members and managers are hereby authorized and directed to, fully perform under, consummate and implement the terms of the Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreement and all ancillary agreements filed therewith or described therein, this Approval Order and the Sale Transaction.

C.   Credit Bid

6. Pursuant to paragraph [19] of the [*Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Authorizing the Debtor to Make Capital Contributions to Non-Debtor Subsidiary; and (V) Granting Related Relief* [D.I. ___] (the "DIP Financing Order")] and section 363(k) of the Bankruptcy Code, the DIP Secured Parties (as defined in the DIP Financing Order) may, at any time prior to consummation of the Sale Transaction on or before the Closing Date, assign all or any portion of the DIP Obligations (as defined in the DIP Financing Order) to the Purchaser.  The Purchaser shall be then authorized and entitled, at its discretion, to credit-bid all or any portion of such acquired DIP Obligations toward the purchase price under the Purchase Agreement.  For the avoidance of doubt, any amount of DIP

11

Obligations shall be treated as an equivalent amount of cash for the purpose of satisfying the Purchase Price (as defined in the Purchase Agreement).

        D.     <u>Sale and Transfer Free and Clear of Encumbrances</u>

        7.     Upon the Closing Date, all of the Debtor's legal, equitable and beneficial right, title and interest in and to, and possession of, the Acquired Interests shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code free and clear of Encumbrances; <u>provided</u>, <u>however</u>, that all Encumbrances shall attach to the proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect that they now have against the Acquired Interests (subject, with respect to such proceeds, to any rights, claims and defenses the Debtor or any parties in interest may possess with respect thereto).  On the Closing Date, this Approval Order shall be considered, and constitute for any and all purposes, a legal, valid, binding, effective and compete general assignment, conveyance and transfer of the Acquired Interests and a bill of sale or assignment transferring indefeasible title in the Acquired Interests to the Purchaser and shall vest Purchaser with good and marketable title to the Acquired Interests.

        E.     <u>Order Binding</u>

        8.     All: (i) persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state and local officials; and (ii) other persons, in each case, who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Interests, shall be authorized and directed to take any such actions in connection with the Sale Transaction or this Approval Order, and this Approval Order shall be binding upon such

12

entities or persons.

9.       This Approval Order shall be binding on all of the Debtor's creditors (whether known or unknown), the Debtor, the Purchaser, and each of their respective affiliates, successors and assigns, and any affected third parties, including all persons asserting an interest in the Acquired Interests, notwithstanding any subsequent appointment of any trustee, party, or other fiduciary under any section of the Bankruptcy Code with respect to the foregoing parties, and as to such trustee, party, or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Approval Order and the terms and provisions of the Purchase Agreement, and any actions taken pursuant hereto or thereto shall survive dismissal of any of the Debtor's chapter 11 or any successor chapter 7 case, or the entry of any order, which may be entered confirming or consummating any plan(s) of the Debtor or converting the Chapter 11 Case from chapter 11 to chapter 7, and the terms and provisions of the Purchase Agreement, as well as the rights and interests granted pursuant to this Approval Order and the Purchase Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtor, the Purchaser and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code.

10.      All debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors or parties in interest holding or asserting Encumbrances arising under or out of, in connection with, or in any way relating to, the Debtor, the Acquired Interests, the ownership, sale or operation of the Acquired Interests and the Debtor's businesses prior to the Closing Date (as defined in the Purchase Agreement) are hereby forever barred, estopped and

13

permanently enjoined from asserting such Encumbrances against the Purchaser, its property or the Acquired Interests. Following the Closing Date, no holder of any Encumbrance shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Interests based on or related to any such Encumbrance, or based on any action of the Debtor.

11.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against or in the Acquired Interests shall not have delivered to the Debtor prior to the Closing Date in proper form for filing and executed by the appropriate parties termination statements or instruments of satisfaction or release of all Encumbrances that such person or Entity has with respect to such Acquired Interests, then: (a) the Debtor is hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Interests that are necessary or appropriate to effectuate the Sale Transaction, any related agreements and this Approval Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtor may determine are necessary or appropriate; and (b) the Purchaser is hereby authorized and empowered to cause to be filed, registered or otherwise recorded a certified copy of this Approval Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against the Purchaser and the applicable Acquired Interests. This Approval Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.

14

F.      Good Faith

12.     Neither the Debtor nor the Purchaser (including, but not limited to their respective equity owners, officers, directors, employees, professionals and other agents thereof) has engaged in any action or inaction that would cause or permit the Sale Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  Entry into the Purchase Agreement is undertaken by the parties thereto, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and the Purchaser shall be entitled to all of the benefits of and protections under section 363(m) of the Bankruptcy Code.  The reversal or modification on appeal of the authorization provided herein to enter into the Purchase Agreement and consummate the Sale Transaction shall not affect the validity of the Sale Transaction, unless such authorization is duly stayed pending such appeal.  The Sale Transaction is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code and the Purchaser is entitled to all the protections and immunities thereunder.

G.      No Successor or Transferee Liability

13.     The Purchaser shall not be deemed, as a result of any action taken in connection with the Purchase Agreement, the consummation of the Sale Transaction, or the transfer or use of the Acquired Interests, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtor; (b) have, *de facto* or otherwise, merged with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Debtor, including within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental or other law, rule or regulation, or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

15

14.     The Purchaser shall have no liability with respect to the Debtor's (or its predecessors or affiliates) respective businesses or obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA and benefits law, antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the ownership of the Acquired Interests prior to the Closing Date.

15.     The Purchaser is providing substantial consideration under the Purchase Agreement for the benefit of the holders of any Encumbrances.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any Encumbrances or claims of Successor or Transferee Liability of the Purchaser.

16.     Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law, equity, or admiralty, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its assets (including the Acquired Interests) or its successors and assigns, with respect to any: (a) Encumbrance; or (b) Successor or Transferee Liability, including, without limitation, commencing or continuing any action or other proceeding pending or threatened, or enforcing any judgment or Encumbrance against the Acquired Assets or the Purchaser first created or arising prior to the Closing Date.

16

H.    <u>Other Provisions</u>

17.    <u>Authorization of Performance by the Debtor</u>.  Without any further corporate action or orders of this Court, the Debtor is authorized to fully perform under, consummate, and implement the terms of the Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreement, this Approval Order, and the Sale Transaction.

18.    <u>Filing of Certain Documents</u>.  The Debtor is authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Sale Transaction, any related agreements and this Approval Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtor may determine are necessary or appropriate.  The execution of any such document or the taking of any such action will be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

19.    <u>Obligation to Close</u>.  The Purchaser will have no obligation to close the Sale Transaction until all conditions precedent to its obligations to do so have been met, satisfied, or waived in accordance with the terms of the Purchase Agreement.

20.    <u>Direction to Government Agencies</u>.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state, and local official and any other person and entity who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in, or to, the

17

Acquired Interests, is hereby authorized and directed to accept any and all documents and instruments necessary or appropriate to consummate the Sale Transaction, this Approval Order and the Purchase Agreement.  All the persons and entities described above in this paragraph are authorized and specifically directed to strike all recorded liens and Encumbrances against the Acquired Interests from their records, official and otherwise.

21.    <u>Transfer of Title and Interests</u>.  All of the Debtor's interests in the Acquired Interests shall be, as of the Closing Date, transferred to, and vested in, the Purchaser.  On the Closing Date, this Approval Order shall be considered, and constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of the Acquired Interests and a bill of sale or assignment transferring indefeasible title in the Acquired Interests to the Purchaser.

22.    <u>No Brokers</u>.  The Purchaser is not obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Sale Transaction.

23.    <u>Failure to Specify Provisions</u>.   The failure specifically to mention any particular provisions of the Purchase Agreement or any related agreements in this Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court, the Debtor, and the Purchaser that the Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties thereto in accordance with this Approval Order.

24.    <u>Further Assurances</u>.  From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale

18

Transaction and Purchase Agreement, including such actions as may be necessary to vest, perfect, confirm or record in the Purchaser its right, title and interest in and to the Acquired Interests.

25.     <u>Governing Terms</u>.  To the extent this Approval Order is inconsistent with any prior order or pleading in the Chapter 11 Case, the terms of this Approval Order shall govern. To the extent there is any inconsistency between the terms of this Approval Order and the terms of the Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Approval Order shall govern.

26.     <u>Modifications</u>.  The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, so long as any such modification, amendment or supplement does not have a material adverse effect on the Debtor or its estate.

27.     <u>No Stay of Order</u>.  Notwithstanding Bankruptcy Rule 6004(h), this Approval Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Approval Order.  Any party objecting to this Approval Order must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing Date or risk its appeal being foreclosed as moot.

<u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to interpret, implement, and enforce the terms and provisions of this Approval Order, the Bidding Procedures Order, and the Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, and decide any issues or disputes

19

concerning this Approval Order and the Purchase Agreement or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired Interests.

RLF1 24301008v.1

## **Exhibit 1**

Purchase Agreement